IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JERRY D. STANFORD, )
)
       Plaintiff, )
)
v. ) Case No. CIV-08-345-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
       Defendant. )

## OPINION AND ORDER

Plaintiff Jerry D. Stanford (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 10, 1961 and was 47 years old at the time of the ALJ's latest decision. He obtained a GED. Claimant has engaged in past relevant work as a clerk, small engine technician, and salvage laborer. Claimant alleges an inability to work beginning July 30, 2003 due to cervical and/or axillary nerve

3

neurapraxia, jaw pain, arthritis of the cervical spine, arthritis and spina bifida of the lumbar spine, bleeding hemorrhoids, left knee pain, hypertension, acid reflux disease, and depression.

**Procedural History**

On July 30, 2003, Claimant protectively filed for supplemental security income benefits pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application for benefits was denied initially and upon reconsideration. On April 11, 2005, Claimant appeared at a hearing before ALJ W. Howard O'Bryan. On June 2, 2005, the ALJ issued an unfavorable decision. On November 8, 2005, the Appeals Council denied Claimant's request for review. Claimant appealed the decision. On September 14, 2006, this Court issued an order granting Defendant's agreed motion to remand the case for further proceedings. The Appeals Council subsequently remanded the case to the ALJ consistent with the order.

On February 26, 2008, Claimant appeared before ALJ Edward L. Thompson for a second administrative hearing. On July 25, 2008, the ALJ issued another unfavorable decision which was not appealed to the Appeals Council but became final after 60 days. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform his past relevant work as a salvage laborer.

## Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in (1) failing to properly evaluate Claimant's alleged mental impairments; (2) failing to engage in a proper analysis at step four of the sequential evaluation; and (3) failing to discuss uncontroverted and significantly probative evidence which conflicted with his findings of disability.

## Claimant's Mental Impairment and Its Effect Upon the ALJ's Step Four Analysis and Discussion of the Evidence

Many of Claimant's problems stemmed from a motorcycle accident which occurred while Claimant was serving in the United States Navy in July of 1980. The injuries included problems with his right shoulder with probable neurapraxia at multiple cervical levels, a brain concussion, a jaw fracture, and a left knee injury. (Tr. 217, 263-64). Claimant exhibited alcohol dependence and marijuana use during this period and underwent detoxification and rehabilitation. (Tr. 215-16). His mental evaluation at that time showed his mental status was "within normal limits." Claimant

openly talked about his drinking, although he felt nervous and shaky and appeared to be in mild withdrawal. (Tr. 217).

On August 30, 1995, Claimant was psychologically evaluated and found to be in the high range of intellectual ability. He also demonstrated moderate symptoms of depression. (Tr. 632). At the time of his discharge, he was found to have a then-current GAF of 57 with GAF of 51 over the past year. (Tr. 215).

On January 7, 2004, a Psychiatric Review Technique form was completed on Claimant by Dr. Margaret McKinney. Dr. McKinney concluded Claimant did not suffer from a medically determinable mental impairment despite his claim of severe depression since 1980 based upon his lack of treatment and the fact he did not previously mention depression or any other mental problem. Dr. McKinney found Claimant to be alert and oriented in no apparent distress. She noted Claimant's use of alcohol and "pot". (Tr. 143-155).

On March 18, 2005, a request for a psychiatric consult was made when Claimant asked to talk with someone about his depression. (Tr. 193-94, 200). Claimant called the VA facility on March 22, 2005, stating he was "losing it." He reported sleep problems, crying spells, feeling sad, problems with concentration when he is driving, but denied being suicidal. Claimant stated he had fits of anger, yells, throws things, then cries. He admitted to drinking

6

heavily and using marijuana daily. (Tr. 198).

On April 20, 2005, Claimant underwent a psychiatric evaluation with Dr. Nasir Zaki. Claimant's chief complaint was continuous depression. He reported drinking beginning with his injuries from the motorcycle accident to "get rid of his bad feelings." He stated he cries a lot for no reason, cuts off from the rest of the world and stays in his room. Claimant felt hopeless, helpless, and worthless. He woke up several times per night but did not feel rested. He could not focus and worried a lot. Claimant reported a loss of sex drive. He denied suicidal or homicidal ideation with no psychotic or manic symptoms. He reported smoking marijuana due to pain. He denied ever being on psychotropic medications. (Tr. 383). Claimant tested negative for PTSD but positive for depression. (Tr. 385).

Dr. Zaki diagnosed Claimant at Axis I: Alcohol Dependence, Marijuana Abuse, Major Depressive Disorder, Recurrent, Moderate; Axis II: Deferred; Axis III: Hypertension, Gastroesophageal Reflux Disease, Arthritis/Multiple Sites, Bleeding Hemorrhoids With Anemia; Axis IV: Stressors are moderate; and Axis V: GAF of 45. (Tr. 386-87). Dr. Zaki instructed Claimant to stop drinking and smoking pot and join an AA group. He also started Claimant on psychotropic medication. Claimant agreed to quit smoking. He was

instructed to continue with follow-up visits with the mental health department at the VA. (Tr. 387).

On August 1, 2007, Claimant was again diagnosed with Major Depressive Disorder, Recurrent, Moderate. His GAF remained 45. (Tr. 659).

In his decision, the ALJ concluded the medical evidence indicated Claimant suffered from chronic alcohol dependence, marijuana abuse, major depressive disorder, tobacco abuse, hypertension, gastroesophadeal reflux disease, hemorrhoids, arthritis, and right shoulder pain secondary to an old injury. (Tr. 459). He recognized Claimant had not undergone in-patient care for a mental impairment. He also acknowledged Claimant was treated twice by Dr. Zaki but stated that no mental health specialist or physician had placed restrictions upon Claimant's ability to perform the mental health demands of work. He then noted Dr. McKinney's view that Claimant did not suffer from a medically determinable impairment. Id. The ALJ concluded Claimant's depression only constituted a slight abnormality with a minimal effect upon his ability to engage in basic work activity. Id.

Other than stating Claimant was treated twice by Dr. Zaki for depression, the ALJ failed to discuss any of the treatment of his

condition or Dr. Zaki's findings as to the severity of Claimant's depression, including the necessity for prescribing psychotropic medication to treat Claimant's depression. The ALJ cannot pick and choose the evidence upon which he relies simply because it supports his finding of non-disability. Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004). Relying upon a finding that no medical professional placed work related restrictions upon Claimant is misplaced. No doubt if a medical professional had expressed such an opinion the ALJ would have stated such a finding was in the exclusive province of the Commissioner.

Moreover, the ALJ did not reference Claimant's consistent GAF of 45. Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir.

(N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). Additionally, more recent Tenth Circuit case authority suggests that the low GAF score should be analyzed as the opinion of a treating physician, making the ALJ's omission of the discussion of Claimant's GAF score all the more problematic. *See*, Givens v. Astrue, 2007 WL 3046302, 6 (10th Cir. (Okla.)). Given the fact Claimant's GAF has fallen within the category which would directly conflict with the ALJ's assessment that Claimant's depression had no effect upon his ability to work, the ALJ will be required to explain his apparent but unexplained rejection of this assessment.

Because the ALJ failed to consider the effect of Claimant's mental impairment upon his analysis at step four and failed to

discuss probative evidence, the ALJ shall re-evaluate all of these findings on remand after reconsidering the medical evidence of Claimant's mental impairment.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 29th day of March, 2010.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE